Per Curiam.

The judgment of the Common Pleas is affirmed, (a)
*312 ADDITIONAL NOTE.
[See 8 Conn. 14.—Frost vs. Hull, 4 N H. 153. — Scarfe vs. Morgan, 4 Mees & W. 270
A statute of New York prohibited the exposing to sale on Sunday any goods, &c Held, the act applied only to the public exposure of commodities for sale, in the streets, stores, shops, &c., not to mere private contracts, and transfers of property under them. — Boynton vs. Page, 13 Wend. 425.
A statute of Connecticut prohibited all secular business on Sunday. The plaintiff having purchased a horse of the defendant on that day, held, he could not maintain an action for .deceit, in New York, either upon such deceit, or upon the contract.— Northrup vs. Foot, 14 Wend. 248.
The plaintiff, an attorney’s clerk, having engaged for a weekly salary to perform the usual duties of that office; held, under the statute to prevent working on Sunday, he could not recover a compensation extra his weekly allowance, for services performed on that day. — Watts vs. Van Ness, 1 Hill. 76. — But see Peate vs. Dickens, 3 Dowl. P. C. 171.
Where a verdict was rendered on Sunday, held, a judgment founded thereupon was not therefore erroneous. — Huidekoper vs. Cotton, 3 Watts, 56.
A note given on Sunday is void, and cannot be enforced. If the contract, in consideration of which the note was given, was made on Saturday, the action must be founded upon the contract, or the plaintiff cannot offer proof of it. — Kepner vs. Keefer, 6 Watts, 231.
A sale or exchange of horses, attended with the usual circumstances, is a secular labor, &c., within the statute (of Vermont) for the observance of the Sabbath. — Lyon vs. Strong, 6 Verm. 219. — Such contract cannot be enforced. Nor a warranty accompanying the sale. ?— Ibid.
The law of Scotland prohibited all work on Sundays, u except works of necessity and mercy.” Held, a barber could not employ his apprentice in shaving his cub tomers on any part of that day. — Phillips vs. Innes, 4 Cl. & Fi. 234. —F. H.]

 [At the common law, the observance of the Sabbath was a duty of imperfect obligation. — Rex vs. Brotherton, 2 Str. 702. — By the statute 29 Car. 2, Ca 7, s. 1, it is enacted “ that no tradesman, artificer, workman, laborer, or other person whatsoever, shall do or exercise any worldly labor, business, or work of their ordinary callings, upon the Lord’s day. — In Drury vs. Defontaine, (1 Taunt. 131,) it was decided that the sale of a horse made on Sunday was valid, because not made in the exercise of the ordinary calling of the vendor or his agent. This case is recognized as law in Bloxome vs. Williams, (3 B. & C. 232. — 5 D. & R. 82,) and Fennell vs. Ridler, (5 B. & C. 406. — 8 D & R. 204 ;) and although Parkr J., in Smith vs. Sparrovi, (4 Bingh 88,) said he did not think the decision was right, and that the expression “ any worldly labor ” could not be confined to a man’s ordinary calling, but applied to any business he might carry on, whether in his ordinary calling or not, yet, in The King vs. The Inhabitants of Whitnash, (7 B. & C. 596,) it was confirmed. Bayley, J., in delivering his opinion, said, “ If the true construction of the act be that every description of business is prohibited, all contracts whatever, made on Sunday, will be void. I think that was not the intention of the legislature. Religion and piety do not require that every moment of every Sunday should be devoted to the performance of religious exercises ; to a reasonable degree, a man may on that day consider his own condition and that of his neighbor, and may do acts beneficial to himself, and calculated to promote the comfort of his neighbor. 1 am of opinion that this act does not prohibit labor, business, or work, of every description, and that the hiring of a servant by a farmer on Sunday is not work or business, within the act of parliament. I also think it is not labor, t usiness, or work, of the ordinary calling of the farmer.” Holroyd, J., said, “ If a farmer sold his corn, or a servant ploughed his land, those would be parts of their ordinary callings.” Littledale, J., said the words “ other persons ” meant persons ejusdem generis, viz., persons having an ordinary calling. And so it was held in Sandiman vs. Breach, (7 B. & C. 100,) where it was decided that these words did not include the owner and driver of a stage-coach. It was an action to recover damage for not conveying the plaintiff in a stage-coach according to agreement made and to be executed on Sunday; and it was held the plaintiff was entitled to recover damages. In Bloxome vs. Williams, ubi sup., Bayley, J., expressed a doubt whether the statute applied to private sales, such as were not open breaches of the Sunday; but, in Fennell vs. Ridler, ubi sup., he said he was satisfied, upon further consideration, that this would be a narrow construction of the act; that there was nothing in the act to show that it was passed exclusively for promoting public decency, and not for regulating private conduct; that labor might be private, and not meet the public eye, and so not offend against public decency; but it was equally labor, and equally interfered with a man’s religious duties; and that the same might be said of business or work. In this case, it was held that the plaintiffs, who were horse-dealers, could not maintain an action on a warranty of a horse given on Sunday. In Bloxome vs. Williams, it was held that a contract for sale and warranty of a horse, coming within the statute of frauds, entered into on Sunday by parole, but not per *312 fected by delivery and payment till Tuesday, was not affected by the act respecting the Lora's day. But, in Smith vs. Sparrow, ubi sup., Best, C. J., said lie would not say that the mere inception of a contract on Sunday would avoid it, if completed the next day ; but if most of the terms were settled on Sunday, and the mere signature referred to the next day, such a contract could scarcely be supported. This was an action for damages for a breach of contract in not accepting certain nutmegs sold by the plaintiff’s agent on Sunday, at the pressing solicitation of the defendant; the broker at first objecting to deliver the contract until the following day, and leaving a blank in his contract book for the name of the vendor, which was not filled up until Monday, and the sold note was delivered to the plaintiff two or three days afterwards. It was held, that the plaintiff could not sustain his action. Gazelee, J., said, “ The plaintiff’s subsequent assent was an assent to the contract made on the Sunday, and there was no evidence to show that there was any subsequent contract.” It is said to have been held in the Circuit Court U. S. in Pennsylvania, that it was no objection to the validity of a deed that it was executed on Sunday, Oct. 3821, MSS. But, in Morgan vs. Richards, (1 Brown, P. R. 172,) it was held that a contract made on Sun* day was void, by the common law, and as being contrary to the act prohibiting any person from doing or performing “ any worldly employment or business whatsoever on the Lord's day.” In Connecticut, by a statutory law, all secular business is forbidden from being done on the Lord's day, or any part thereof; and the courts of that state, from the earliest times, have accordingly adjudged all contracts, whether by parole, or in writing, made or executed on that day, to be void. — Fox vs. Abel, 2 Conn. Rep 548. — 1 Swift's System, 367.— Wight vs. Geer, 1 Root, 474.— Our statute of 1791, c. 58, s. 1, enacts that no person or persons whatsoever shall keep open his, her, or their shop, warehouse, or work-house, nor shall, upon land or water, do any manner of labor, business, or work, (works of necessity and charity only excepted,) on the Lord's day, or any part thereof. — Ed.]