(No. 23473.—

THE PEOPLE *ex rel.* Oscar Nelson, Auditor of Public Accounts, *vs.* THE KASPAR AMERICAN STATE BANK.— (FRED A. GURDES, Appellee, *vs.* ARTHUR MEYER, Receiver, Appellant.)

*Opinion filed June 10, 1936—Rehearing denied October 7, 1936.*

LORD, LLOYD & BISSELL, and McFARLAND, MORGAN & McFARLAND, (DAVID J. KADYK, A. C. WETTERSTROM, and GORDON R. CLOSE, of counsel,) for appellant.

HUBBARD, BAKER & RICE, for appellee.

Mr. JUSTICE SHAW delivered the opinion of the court:

In 1927 the appellee, Fred A. Gurdes, was an engineer employed by the city of Berwyn on construction projects financed by special assessment funds. He was the holder of three city warrants for various sums due him, which in August of that year he returned to the city comptroller, presumably for collection, and received the comptroller's receipt therefor. Several times afterward in the same year he requested payment but each time was told that there were no funds. The total sum due under these warrants was $3563.91. In October of 1927 a check was issued by the city of Berwyn payable to Gurdes which was presumably in payment of these three warrants but which was never delivered to him and which he never saw until some time in 1932, when it was shown to him in the office of the State's attorney of Cook county in connection with an investigation of the forgery of his endorsement. This check appears to have left the office of the treasurer of Berwyn in a mysterious and unexplained manner. It was payable at the office of the city treasurer, or, at the option of the holder, at the Berwyn State Bank. It was in the usual negotiable form and had been cashed October 17, 1927, by the First National Bank of Cicero on the forged endorsement of Gurdes. The person who actually received the cash is not identified by the record and we have no way of knowing what became of the money. The Cicero Bank negotiated the check to the Kaspar American State Bank on the same date it was cashed, and, so far as the record discloses, was reimbursed for the money it had paid out.

The Kaspar American State Bank on the next day negotiated the check to the Continental and Commercial National Bank of Chicago, which endorsed it on the same date to any bank, banker or trust company, and this is the last endorsement. A photostatic copy of the check in the record bears the customary "paid" in punctures, but there is nothing on the check or in the record to show who finally paid it, whether the Berwyn State Bank or the city treasurer of Berwyn, they being the only two parties likely to make final payment. The record thus leaves us knowing only as a certainty (1) that Gurdes never received or owned the check, and (2) that some unidentified forger was the only person fraudulently enriched by the transaction.

The Kaspar American State Bank went into liquidation July 12, 1932, and the appellant was appointed its receiver. This litigation originated by the filing of an intervening petition in that receivership on behalf of Gurdes, setting forth substantially the facts above stated and praying that he be allowed a claim against the bank for the face of the check, plus interest at five per cent per annum from the date the check cleared through the bank to the date of the petition. The appellant answered, for the most part praying strict proof, and setting up that the claim, if any, should be against the city of Berwyn or the Berwyn State Bank; that the Kaspar American State Bank was nothing more than an intermediary endorsee, and alleging *laches* and negligence on the part of Gurdes in waiting nearly five years before finding out what had become of his claim against the city and then discovering the alleged forgery. The trial court allowed the claim in full, with interest, from which an appeal was prosecuted to the Appellate Court for the First District, where the judgment was affirmed. The case is here on further appeal, on leave granted by this court.

Section 16 of the Negotiable Instruments act (Smith's Stat. 1935, chap. 98, par. 36,) provides that every contract on a negotiable instrument is incomplete and revocable un-

til delivery of the instrument for the purpose of giving effect thereto. Gurdes testified that he never received the check in question and that he never knew there was such a check in existence until April or May of 1932, nearly five years after the date of the instrument in question. The provision of our Negotiable Instruments act above mentioned is nothing more than a re-statement of what the law has always been in Illinois and elsewhere. (*King* v. *Fleming*, 72 Ill. 21; *Irving Trust Co.* v. *Leff*, 253 N. Y. 359; *Washington Mechanics Savings Bank* v. *District Trust and Ins. Co.* 65 Fed. (2d.) 827; 2 Morse on Banks and Banking, par. 474; 8 Corpus Juris, 203.) In *First Nat. Bank* v. *Pease*, 168 Ill. 40, we held that in a case where a bank paid a check on a forged endorsement, where there had been no delivery, the liability was to the drawer of the check and not to the payee. *Independent Oil Men's Ass'n* v. *Bank*, 311 Ill. 278, cited and relied upon, is not in point, as in that case there had been a delivery of the checks, and they had thus become valid contracts on negotiable instruments.

Gurdes and the Kaspar American State Bank were strangers to each other, and the bank was nothing more than an intermediary endorsee. There is nothing in the record to show that the bank was enriched by the transaction or that it committed any wrong against the intervening petitioner. We can find no theory, arising either through contract, tort or trusteeship, upon which to found any liability, and we are therefore of the opinion that the judgments below were erroneous.

The judgments will therefore be reversed.

*Judgments reversed.*