**PAPEX INTERNATIONAL BROKERS LTD., a/k/a Les Courtiers Papex International Ltd., Plaintiff, Appellant.**

v.

**CHASE MANHATTAN BANK, N.A., Defendant, Appellee.**

No. 86–1858.

United States Court of Appeals, First Circuit.

Argued Feb. 2, 1987.

Decided June 29, 1987.

**884**

Jorge Souss with whom Ramon E. Dapena and Brown, Newsom & Cordova, Hato Rey, P.R., were on brief for plaintiff, appellant.

Jay A. Garcia-Gregory with whom Julio M. Rodriguez, Madelaine Riefkohl-Gorbea, and Fiddler, Gonzalez & Rodriguez, San Juan, P.R., were on brief for defendant, appellee.

Before COFFIN, Circuit Judge, WISDOM,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

WISDOM, Senior Circuit Judge:

This appeal presents the question whether, under Puerto Rican Law, a payee can sue the collecting bank that accepts and pays checks on the payee's forged indorsement even though the drawer never delivered the checks to the payee. The district court dismissed the suit, holding that Puerto Rico's version of the Negotiable Instruments Law does not provide the payee with a direct action against the collecting bank. We affirm, but on the alternate ground that the payee has no standing to sue on the checks because the payee never became a "holder" of those checks.

* Of the Fifth Circuit, sitting by designation.

1. P.R. Laws Ann. tit. 19 (1974).

## I.

This appeal comes before us from a dismissal on the pleadings. We must, therefore, accept the allegations of the plaintiff's complaint as true. The drawer in this case is Banco de Reservas de la Republica Dominicana. It drafted two checks drawn on its account with the Irving Trust Company of New York, one on November 8, 1983 for $133,950 and one on March 14, 1984 for $161,229.75. The first check named Papex International Letee [sic] as payee; the second named Papex International Brokers Ltd. as payee. The pleadings show that the plaintiff, Papex International Brokers, Ltd., a corporation organized under the laws of Canada, is also known as Les Courtiers Papex International Ltee ("Papex"). The checks were never delivered to Papex, nor did Papex ever come into possession of the checks. Later, an unknown person took the checks, forged the payee's endorsement, and presented the checks to the Chase Manhattan Bank for payment. Chase Manhattan accepted and paid the checks. Later, Papex filed this complaint against Chase Manhattan Bank alleging that the bank wrongfully paid the checks on forged indorsements.

## II.

■ This suit is brought under diversity jurisdiction; Puerto Rican law governs. Puerto Rico is the only remaining American jurisdiction to operate under the Uniform Negotiable Instruments Law (N.I.L.).[1] Elsewhere, the N.I.L. has been replaced by article three of the Uniform Commercial Code. Section 3–419 of the U.C.C. specifically gives the payee a cause of action against the collecting bank that pays a check on a forged indorsement.[2] The N.I.L. did not contain an equivalent provision, leading to a split of authority among the states when they operated under that law. The majority of the states recognized the payee's action against the collecting bank under various theories outside the scope of N.I.L.[3] On the other hand, some

2. *Lincoln Nat'l Bank & Trust Co. v. Bank of Commerce*, 764 F.2d 392, 395–96 (5th Cir.1985).

3. *Brady on Bank Checks* § 24.4 at 24–13 to –15 (5th ed. 1979); 100 A.L.R.2d 670 (1965).

states, including Louisiana, the only state to share Puerto Rico's civilian heritage, did not allow the payee to recover from the collecting bank.[4]

The district court dismissed the complaint of Papex because it found no authority in Puerto Rico's Negotiable Instruments Act to support the action. We are hesitant to affirm on this reasoning because some jurisdictions have allowed this type of action despite the silence of the N.I.L. and because no Puerto Rican court has addressed this issue. We affirm on the alternative basis that Papex has no standing to sue because the drawer never delivered the checks to Papex. Although the district court did not reach this issue, we may affirm its dismissal on any ground apparent from the record, especially when the parties have had the opportunity to develop the issue both before the district court and this Court.[5]

### III.

An elementary principle of negotiable instruments law is that the payee acquires no rights in an instrument until the instrument is delivered to him.[6] This principle is of ancient origin and is embraced both by the N.I.L. and the U.C.C.[7] Puerto Rico's N.I.L. specifically sets forth the necessity of delivery. Section 17 provides, in part:

Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto.

Section 61 provides:

An instrument is negotiated when it is transferred from one person to another in such a manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery.

The courts of Puerto Rico have recognized that the failure to allege and prove delivery is fatal to a suit on an negotiable instrument.[8]

No Puerto Rican court has squarely addressed the issue before this Court. We find support, however, in numerous decisions from other jurisdictions. The vast majority of these decisions hold that a payee cannot recover from the collecting bank that pays on a forged endorsement if the check was never delivered to the payee.[9] The reasons given in these decisions are several. First, without delivery the payee can not come into possession of the instrument and thereby acquire the status of a holder.[10] Second, even though the payee cannot recover from the collecting bank, he retains his right to sue the drawer on the obligation underlying the check.[11]

**4.** *Smith v. Louisiana Bank & Trust Co.,* 272 So.2d 678 (La.1973); *Soderlin v. Marquette Nat'l Bank,* 214 Minn. 408, 8 N.W.2d 331 (1943).

**5.** *See, e.g., Cloutier v. Town of Epping,* 714 F.2d 1184, 1188 (1st Cir.1983).

**6.** *See Lincoln Nat'l Bank & Trust Co. v. Bank of Commerce,* 764 F.2d 392, 397–98 (5th Cir.1985); *City Nat'l Bank of Miami v. Wernick,* 368 So.2d 934, 936 (Fla.Dist.Ct.App.), *cert. denied,* 378 So.2d 350 (Fla.1979).

**7.** *City Nat'l Bank of Miami v. Wernick,* 368 So.2d 934, 936 (Fla.Dist.Ct.App.), *cert. denied,* 378 So.2d 350 (Fla.1979); *Brady on Bank Checks* § 5.1 at 5–2 (5th ed. 1979).

**8.** *Segarra-Serra v. Manescau,* 38 P.R.R. 836, 838–39 (1928); *Schluter & Co. v. Gonzalez,* 34 P.R.R. 292, 293–94 (1925).

**9.** *E.g., Lincoln Nat'l Bank & Trust Co. v. Bank of Commerce,* 764 F.2d 392, 397–98 (5th Cir.1985) (applying U.C.C.); *Jones v. Bank of Am. Nat'l Trust & Savings Ass'n,* 49 Cal.App.2d 115, 121 P.2d 94, 97–98 (1942) (applying N.I.L.); *City Nat'l Bank of Miami v. Wernick,* 368 So.2d 934, 936–37 (Fla.Dist.Ct.App.) (applying common law), *cert. denied,* 378 So.2d 350 (Fla.1979); *People ex rel. Nelson v. Kaspar Am. State Bank,* 364 Ill. 121, 4 N.E.2d 14, 15–16 (1936) (applying N.I.L.); *Winn v. First Bank of Irvington,* 581 S.W.2d 21, 23 (Ky.App.1978) (applying U.C.C.); *Dolin v. Darnall,* 181 A. 201, 202–03 (N.J.1935) (applying N.I.L.).

**10.** *See Lincoln Nat'l Bank & Trust Co. v. Bank of Commerce,* 764 F.2d 392, 397 (5th Cir.1985); *Dolin v. Darnall,* 181 A. 201, 202 (N.J.1935). P.R.Laws Ann. tit. 19, § 381 (1974) provides that "'Holder' means the payee or indorsee of a bill or note, *who is in possession of it"* (emphasis added).

**11.** *Lincoln Nat'l Bank & Trust Co. v. Bank of Commerce,* 764 F.2d 392, 393 (5th Cir.1985); *Winn v. First Bank of Irvington,* 581 S.W.2d 21, 23 (Ky.App.1978).

Third, when the payee does not receive the check, the forged endorsement is probably the result of the drawer's negligence, an issue not easily litigated in a suit between the payee and the collecting bank.[12]

■ Papex argues that it is entitled to a presumption of delivery, citing section 17 of the Puerto Rico N.I.L., which provides in part:

> where the instrument is no longer in possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved.

Papex's reliance on this provision is misplaced; a presumption of delivery arises only in favor of the possessor.[13] Papex alleged that it never possessed the checks.

■ Papex also argues that the delivery to the forger suffices to show a "constructive" delivery to Papex. Although some courts have recognized that an intended, but thwarted, delivery is sufficient to give the payee standing to sue, the payee must at least show that the drawer surrendered the instrument to the power of the payee or to some third person for the payee's use.[14] Papex never alleged that Banco de Reservas de la Republica Dominicana attempted a delivery to Papex by surrendering the checks to someone on Papex's behalf.

■ We are mindful that, under the notice pleading requirements of the federal rules, the allegations of the complaint should be construed favorably to the complainant on a motion to dismiss. In this case, however, the allegations of the complaint do not demonstrate the existence of a cause of action against Chase Manhattan, even if we accept all the allegations as true. Papex specifically alleges that it never received and never possessed the checks. Only the holder of a negotiable instrument may sue upon the instrument.[15] The holder is "the payee or indorsee of a bill or note who is in possession of it".[16] Papex's own allegations negate the prerequisite for standing to sue on the checks; it is not the holder of checks negotiated to it by delivery. Papex has made no attempt to amend its complaint, and concedes that, even given the opportunity to do so, it cannot show that it is a holder or that the checks were delivered to it.

### IV.

■ Papex challenges also the district court's decision to deny further discovery. We find no abuse of discretion by the court. Papex attempted to discover whether Chase Manhattan still had possession of a portion of the proceeds from the checks. Assuming that Papex had standing to sue Chase Manhattan, whether the bank still possessed proceeds from the checks may have been relevant.[17] In this case, however, the issue is irrelevant because Papex does not have standing to sue. When further discovery will not overcome the plaintiff's failure to state a claim, the district court may properly deny the discovery request.[18]

The decision of the district court dismissing the plaintiff's complaint is AFFIRMED.

12. *Lincoln Nat'l Bank & Trust Co. v. Bank of Commerce,* 764 F.2d 392, 398 (5th Cir.1985).

13. *Dolin v. Darnall,* 181 A. 201, 204 (N.J.1935) (interpreting N.I.L.); *Brady on Bank Checks* § 5.3 at 5–7 (5th ed. 1979) (same); *see also Schluter & Co. v. Gonzalez,* 34 P.R.R. 292, 294 (1925), holding that the plaintiff was not entitled to a presumption of delivery because he did not allege that he was a holder.

14. *Jones v. Bank of Am. Nat'l Trust & Savings Ass'n,* 49 Cal.App.2d 115, 121 P.2d 94, 98 (1942); *City Nat'l Bank of Miami v. Wernick,* 368 So.2d 934, 937 (Fla.Dist.Ct.App.), *cert. denied,* 378 So.2d 350 (Fla.1979).

15. P.R.Laws Ann. tit. 19, § 91 (1974).

16. *Id.* § 381.

17. *See* U.C.C. § 3–419(1), which limits the liability of a collecting bank that pays on a forged indorsement to the amount of proceeds remaining in its possession.

18. *B.R.S. Land Investors v. United States,* 596 F.2d 353, 356 (9th Cir.1979).